**UNITED STATES of America,**
**Appellee,**

v.

**Tyshea MINCEY, also known as Tyshea Ferrell, and Deshawn Ferrell, also known as Barry Shawn, Defendants–Appellants.**

**Docket Nos. 03–1419L, 03–1520(CON).**

United States Court of Appeals,
Second Circuit.

Argued: July 16, 2004.

Decided: Aug. 12, 2004.

Samuel M. Braverman, Bronx, New York, for Defendant–Appellant Tyshea Mincey.

Theodore S. Green, Green & Willstatter, White Plains, New York, for Defendant–Appellant DeShawn Ferrell.

Glenn C. Colton, Assistant United States Attorney, Southern District of New York, New York, New York (David N. Kelley, United States Attorney, Celeste L. Koeleveld, Assistant United States Attorney, on the brief), for Appellee.

Before: POOLER, SACK, and RAGGI, Circuit Judges.

PER CURIAM.

There is considerable consternation and concern, in the federal courts and else- where, about the impact, if any, of the decision of the United States Supreme Court in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), on the United States Sentencing Guidelines (the "Guidelines"). *See, e.g., United States v. Penaranda,* 375 F.3d 238 (2d Cir.2004) (in banc) (certifying to the Supreme Court questions relating to *Blakely*'s possible application to the Guide- lines).

On August 2, 2004, the Supreme Court granted certiorari in two cases that appear to raise these issues. Oral argument in both cases is scheduled for October 4, 2004. *See United States v. Booker,* —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——, 2004 WL 1713654 (2004) (mem.); *United States v. Fanfan,* —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——, 2004 WL 1713655 (2004) (mem.).

Although our Court, acting in banc, has certified to the Supreme Court questions concerning whether *Blakely* applies to the Guidelines, *see Penaranda,* 375 F.3d at 246–48, we now conclude that, pending the Supreme Court's answers to these ques- tions, either in response to our certification or in the decisions in *Booker* and *Fanfan,* or both, it is appropriate to give the dis- trict courts of this Circuit guidance as to whether and how to employ the Guidelines when sentencing defendants. We there- fore proceed to decide the sentencing as- pects of this case on their merits.[1]

I.  *Factual Background*[2]

A.  *The Crimes of Conviction*

Appellants Tyshea Mincey and DeShawn Ferrell, brothers, appeal from judgments

---

[1]. This *per curiam* opinion was circulated be- fore filing to all active members of this Court. *See, e.g., Tesser v. Board of Educ.,* 370 F.3d

314, 320 n. 3 (2d Cir.2004); *Adeleke v. United States,* 355 F.3d 144, 155 n. 9 (2d Cir.2004).

[2]. In an unpublished order dated _____, we summarily rejected all of appellants' other

of conviction entered on July 25, 2003, and June 25, 2003, respectively, in the United States District Court for the Southern District of New York (Charles L.· Brieant, *Judge*) on federal firearms charges. Specifically, Mincey and Ferrell were convicted of conspiracy to violate federal firearms laws, *see* 18 U.S.C. § 371, unlicensed firearms dealing, *see id.* § 922(a)(1)(A), and interstate transportation and receipt of firearms, *see id.* § 922(a)(3). On a fourth count, the jury acquitted Mincey but convicted Ferrell of interstate travel with intent to further firearms dealing. *See id.* § 924(n).

To commit the charged crimes, the brothers made several trips to Georgia in the latter half of 2001. There, they enlisted friends and family members, many of whom testified as prosecution witnesses, to act as "straw purchasers" for eighteen firearms that were then transported back to New York. Seven of these guns, which authorities recovered in the Newburgh area primarily from drug dealers or convicted felons, were received in evidence at trial.

## B. *The Sentencing Proceedings*

The district court sentenced Ferrell to 234 months' incarceration, one month short of the high end of his 188–235 month Guidelines range, based on a total offense level of 34 and a Criminal History category of III. The court sentenced Mincey to 51 months' incarceration, the high end of his

41–51 month range, based on a total offense level of 22 and a Criminal History category of I. Except for defendants' guilt on the charges in the indictment, none of the facts relevant to the Guidelines calculations was submitted to the jury for findings beyond a reasonable doubt. Rather, all Guidelines enhancements were found by the district court applying a preponderance of the evidence standard.[3]

In Ferrell's case, the district court determined that his base offense level was 20 because he was a convicted felon at the time he committed the charged crimes. *See* U.S. Sentencing Guidelines Manual § 2K2.1(a)(4)(A) (2002). A 4–level enhancement was then applied based on the court's finding that the conspirators acquired between eight and twenty-four guns. *See id.* § 2K2.1(b)(1)(B).[4] The court also concluded that a preponderance of the credible trial evidence supported three additional enhancements: (1) a 4–level enhancement because Ferrell sold one or more of the guns to persons he had reason to believe would use the firearms for criminal purposes, *see id.* § 2K2.1(b)(5); (2) a 4–level enhancement because Ferrell had played a leadership role in a conspiracy involving five or more persons, *see id.* § 3B1.1(a); and (3) a 2–level enhancement because Ferrell had attempted to obstruct justice, *see id.* § 3C1.1. Ferrell raised no objection to the enhancement for the number of guns. Although he did challenge the sufficiency of

---

challenges to their convictions and sentences. Accordingly, in this opinion, we outline only those facts necessary to address the Sixth Amendment argument.

**3.** Without these enhancements, Ferrell's base offense level would have been reduced from 34 to 20, which, with a criminal history category of III, would have reduced his Guidelines sentencing range from 188–235 months to 41–51 months. Mincey's base offense level would have been reduced from 22 to 12,

which, with a criminal history category of I, would have reduced his Guideline range from 41–51 months to 10–16 months.

**4.** Section 2K2.1(b)(1) provides for no enhancement to base offense level if a firearms crime involved fewer than three guns. The enhancement for 3–7 guns is 2 levels; for 8–24 guns, 4 levels; for 25–99 guns, 6 levels; for 100–199 guns, 8 levels; and for 200 or more guns, 10 levels. *See id.* § 2K2.1(b)(1)(A)-(E).

the evidence with respect to the last three enhancements, he did not argue that the disputed facts had to be found by a jury rather than the court or that the proper burden of proof was beyond a reasonable doubt.

In Mincey's case, the district court determined that his base offense level was 12, *see id.* § 2K2.1(a)(7); a 4–level enhancement was warranted because of the number of guns, *see id.* § 2K2.1(b)(1)(B); another 4–level enhancement was appropriate because Mincey sold one or more of the guns to persons he had reason to believe would use them for criminal purposes, *see id.* § 2K2.1(b)(5); and a final 2–level enhancement was warranted by Mincey's attempt to obstruct justice by lying at his detention hearing, *see id.* § 3C1.1. Like Ferrell, Mincey raised only a general sufficiency objection to the last two enhancements. But with respect to the enhancement for the number of guns, Mincey specifically objected to being held accountable for a number of firearms not found by the jury beyond a reasonable doubt, citing the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The district court rejected Mincey's *Apprendi* challenge, noting that the number of firearms supporting the 4–level enhancement "only needs to be shown by a preponderance. The *Apprendi* rule does not enter into the case at all, because the statutory maximum on the statutory charges is not reached." Sentencing Tr., July 22, 2003, at 17.

## II.  *Discussion*

### A.  *Standard of Review*

■ Appellants submit that *Blakely* requires that their sentences be vacated because they were based on Guidelines enhancements not supported by facts found by a jury beyond a reasonable doubt, in violation of their Sixth Amend-

ment rights. *See* U.S. CONST. amend. VI. We review this question of law *de novo. See United States v. Yousef,* 327 F.3d 56, 140 (2d Cir.2003). To the extent that Mincey raised a *Blakely*-type claim in the district court regarding the 4–level enhancement for the number of guns, we review this claim for harmless error. *See United States v. Friedman,* 300 F.3d 111, 127 (2d Cir.2002) (citing FED. R. CRIM. P. 52(a)). Although the appellants now invoke *Blakely* in support of a broader Sixth Amendment challenge to all Guidelines enhancements applied in their case, we need not determine whether plain error or *de novo* review is applicable because, whichever standard is appropriate, defendants cannot now prevail. *Cf. United States v. Rybicki,* 354 F.3d 124, 129 (2d Cir.2003) (in banc) (concluding that there was no plain error because "the district court committed no error, plain or otherwise"), *petition for cert. filed,* 72 U.S.L.W. 6334 (U.S. Mar. 29, 2004) (No. 03–1375).

### B.  *Sixth Amendment*

■ The appellants assert that under *Blakely,* contrary to the Guidelines, *see* U.S. SENTENCING GUIDELINES MANUAL § 6A1.3 (policy statement), the Constitution requires that the facts on which the district court bases sentencing enhancements be determined by a jury beyond a reasonable doubt. Before *Blakely,* of course, we (like our sister circuits) have consistently held otherwise. *See, e.g., United States v. Thomas,* 274 F.3d 655, 664 (2d Cir.) (in banc) (rejecting argument that jury fact-finding was necessary for application of Guidelines enhancements that did not result in sentences higher than those prescribed by the statute of conviction), *cert. denied,* 531 U.S. 1069, 121 S.Ct. 756, 148 L.Ed.2d 659 (2001); *United States v. Garcia,* 240 F.3d 180, 184 (2d Cir.2001) (holding that a Guidelines factor

that is "unrelated to a sentence above a statutory maximum or to a mandatory statutory minimum, [as established by Congress,] may be determined by a sentencing judge and need not be submitted to a jury"). One consistent theme of these cases is that the method of fact-finding called for by the Guidelines is consistent with the constitutional right to a jury trial as interpreted by the Supreme Court in *Apprendi.*

The pending issue for us is whether we should now abandon the prevailing law of this Circuit because of arguments based on what the *Blakely* decision might portend for the future of Guidelines sentencing. We conclude that we should not. In the first place, the Supreme Court explicitly stated in *Blakely* that "[t]he Federal Guidelines are not before us, and we express no opinion on them." *Blakely,* 124 S.Ct. at 2538 n. 9. Secondly, because of the Supreme Court's grants of petitions for certiorari in *Booker* and *Fanfan* and the setting of an expedited schedule, we can expect to be advised soon in the event that the Supreme Court intends to apply *Blakely* to the Guidelines. Under these circumstances, we will adhere to the law of this Circuit.

We therefore reject appellants' arguments that, in this Circuit, the Sixth Amendment now requires every enhancement factor that increases a Guidelines range to be pleaded and proved to a jury beyond a reasonable doubt. Unless and until the Supreme Court rules otherwise, the law in this Circuit remains as stated in *Garcia, Thomas,* and our other related case law. We conclude that the district court did not err in sentencing defendants in accordance with the Guidelines as previously interpreted by this Court.

In so holding, we expect that, until the Supreme Court rules otherwise, the courts of this Circuit will continue fully to apply the Guidelines.

### Conclusion

For the reasons stated herein, we reject defendants' Sixth Amendment challenge to the Guidelines. For the same reasons and for additional reasons stated in a summary order also filed today, we affirm the district court's judgments of conviction. The mandate in this case will be held pending the Supreme Court's decision in *Booker* and *Fanfan.* Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address the defendant's sentence until after the Supreme Court's decision in *Booker* and *Fanfan.* In that regard, the parties will have until 14 days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan.*